# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LYNN GRIFFIN, individually and as successor in
interest to her deceased husband, JOHN GRIFFIN,

   Plaintiff,

  v.                No. 1:21-cv-00138-KWR-LF

VIVINT SOLAR, INC.,
VIVINT SOLAR DEVELOPER, LLC,
VIVINT SOLAR HOLDINGS, INC.,
SUNRUN, INC., and
BRIAN BROOKER,

   Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

**THIS MATTER** comes before the Court upon Defendants' Motion to Compel Arbitration and Stay Action, filed February 23, 2021. **Doc. 6**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is **GRANTED** and the matter is **STAYED**.

## BACKGROUND

This case stems from a Residential Solar Power Purchase Agreement ("Agreement") entered into by Defendants and Plaintiff Lynn Griffin's deceased husband, John Griffin, involving the installation of solar panels and other equipment on the Griffin's property. Plaintiff filed the action in state court on January 12, 2021 alleging negligent misrepresentation (Count I), fraudulent misrepresentation (Count II), breach of contract (Count III), equitable recovery under principles of restitution and unjust enrichment (Count IV), and violations of the New Mexico Unfair Practices

Act (Count V). *See generally* Complaint, Doc. 1-1, Ex. A. Defendants removed the action on February 18, 2021 on the basis of diversity jurisdiction.

I. **Factual Background**

The Complaint alleges that Plaintiff reached out to Defendant Vivint[1] in early 2016 when the Griffins became interested in obtaining solar energy systems for their home. **Compl., ¶ 29.** On or about February 6, 2016, Defendant Brooker, a sales representative of Defendant Vivint Solar Developer, met with the Griffins in their home. *Id.*, **¶ 30.** He brought a 12-inch tablet to the meeting, which he allegedly used to verbally describe the Agreement. *Id.*, **¶ 31.**[2] Mr. Brooker allegedly engaged in "high pressure sales tactics," including making false and misleading statements in an effort to induce the Griffins to enter into the Agreement. *Id.*, **¶ 33.** These false and misleading statements purportedly included, among other things, that: (1) the solar energy produced would reduce the Griffin's total cost of energy to "only nominal charges"; (2) if the solar system overproduced electricity, the Griffins would receive a credit; (3) the Griffin's payment under the Agreement would be less than what they were previously paying the Public Service Company of New Mexico ("PNM") before adding the solar array; (4) the solar system would save the Griffin's 30% on their electric bill; and, (5) the total monthly outlay for Vivint's energy would be lower than PNM's. *Id.*, **¶¶ 34-35, 38-40.** Mr. Brooker also allegedly never disclosed that Vivint would put a lien on the Griffin's home, "which Vivint apparently did do." *Id.*, **¶ 42.**

---

[1] Defendants Vivint Solar, Inc., Vivint Solar Developer, LLC., and Vivint Solar Holdings, Inc., are collectively referred to in the Complaint as "Vivint." The Complaint further alleges that, "Upon information and belief, Sunrun [Inc.] acquired Vivint Solar in October 2020, and Vivint Solar continues to operate as a directly wholly owned subsidiary of Sunrun…all of the entities comprising Vivint are subject to the dominion and control of Sunrun." **Compl., ¶¶ 12-13.**

[2] The Complaint states that, "Ms. Griffin has been unable to locate any cotemporaneous document so it may never have been provided at that time. A copy obtained since may or may not be the same document but does appear to bare Mr. Griffin's electronic signature." *Id.*, **¶ 32.**

The Complaint further alleges that Brooker had the Agreement open on his tablet screen while describing the Agreement verbally to the Griffins but claims he neither mentioned anything to them about their rights regarding arbitration during the discourse nor afforded them with an opportunity to review the Agreement prior to signing it. *Id.*, ¶¶ **46-47.** The Complaint also alleges that Brooker did not provide the Griffins with a paper copy of the Agreement, incorrectly claimed that the contract could be cancelled at any time, and "as best as Ms. Griffin can recall," only presented the tablet to them with a portion of the Agreement visible on the screen, which Mr. Griffin signed with his finger. *Id.*, ¶¶ **48-50.**

In April 2016, Defendants completed installation of 51 solar panels on the Griffin's home. *Id.*, ¶ **51.** The Complaint alleges that Defendants overbuilt the solar system relative to the Griffin's history of electricity consumption and failed to optimize the size of the system so that the Griffins would save money, instead designing it to optimize Defendants' profits, resulting in higher prices than PNM. *Id.*, ¶¶ **52-56.**

## II. The Arbitration Agreement

The Arbitration Agreement contains a plain language, underlined title which reads "<u>Arbitration of Disputes</u>." In the relevant parts, the Arbitration Agreement states the following[3]:

> **PLEASE READ THIS PROVISION CAREFULLY. BY SIGNING BELOW, YOU ACKNOWLEDGE AND AGREE THAT, WITH LIMITED EXCEPTIONS, ANY DISPUTE BETWEEN US SHALL BE RESOLVED BY BINDING ARBITRATION.** Arbitration is more informal than a lawsuit in court. In arbitration, disputes are resolved by an appointed arbitrator instead of a judge or jury. Therefore, by signing below, YOU ARE WAIVING THE RIGHT TO A TRIAL BY JURY. By signing below, You also agree to bring claims against Us only in Your individual capacity and YOU ARE WAIVING THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. *Procedures before Initiating Arbitration or Suit:* Most customer concerns can be resolved quickly and amicably by calling Our customer service department . . . If You and We are unable to resolve the Dispute within thirty (30)

---
[3] The sections of the Arbitration Agreement are depicted as they appear in the original exhibit.

days thereafter, then either Party may commence arbitration or an action in small claims court as set forth below.

*Scope of this Arbitration Provision:* Either You or We may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy arising out of or relating to (i) any aspect of the relationship between You and Us, whether based in contract, tort, statute, or any other legal theory; (ii) this Agreement or any other agreement concerning the subject matter hereof; (iii) any breach, default, or termination of this Agreement; and (iv) the interpretation, validity, or enforceability of this Agreement, including the determination of the scope or applicability of this Section 6(e) (each, a "***Dispute***"). Any questions about whether any Dispute is subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced….

**Doc. 6-2, Ex. A at pp. 10-11.** The Arbitration Agreement further provides:

NOTICE: BY CHECKING THE BOX BELOW, YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY BINDING NEUTRAL ARBITRATION AS PROVIDED BY THE FAA AND OTHER APPLICABLE LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY CHECKING THE BOX BELOW, YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE FAA AND OTHER APPLICABLE LAW. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. YOU HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

*Id.* **at p. 12.** In addition, the Agreement provides the following instruction on the signature page:

D. DO NOT SIGN THIS AGREEMENT BEFORE YOU HAVE READ ALL OF ITS PAGES. You acknowledge that You have read and received a legible copy of this Agreement, that We have signed it, and that You have read and received a legible copy of every document that We have signed during the negotiation.

*Id.* **at p. 17.** With respect to the customer's right to cancel the contract, Section G of the Agreement states:

**G. CUSTOMER'S RIGHT TO CANCEL. YOU MAY CANCEL THIS CONTRACT AT ANY TIME BEFORE THE LATER OF:**

**(I) MIDNIGHT OF THE THIRD (3RD) BUSINESS DAY AFTER THE TRANSACTION DATE, OR (II) THE START OF INSTALLATION OF THE SYSTEM OR ANY OTHER INSTALLATION WORK WE PERFORM ON YOUR PROPERTY.**

*Id*. The Agreement contains a final notice to customers on the signature page:

**NOTICE TO CUSTOMERS**
…
**BY CHECKING THIS BOX, YOU AGREE TO ARBITRATION AND WAIVE THE RIGHT TO A JURY TRIAL AS DESCRIBED <u>IN SECTION 6(e)</u>, AND AGREE THIS CHECKBOX CONSTITUTES YOUR ELECTRONIC SIGNATURE.**

*Id*. **at p. 17.**

The checkbox to the left of the preceding notice is selected and the document is electronically signed by Brooker and Mr. Griffin. *Id.*

Defendants note, and Plaintiff does not dispute or acknowledge in its response brief, that on February 28, 2017, Vivint Solar Developer, LLC, and Mr. Griffin entered into a confidential settlement agreement that included a similar, mandatory arbitration clause, which Mr. Griffin signed.[4] **Doc. 17-1, Ex. A at pp. 3-4.**

## LEGAL STANDARD

Under Section 4 of the Federal Arbitration Act ("FAA"), "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court [. . .] for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA, which governs

---

[4] In their Reply brief, Defendants also assert that "Plaintiff cannot dispute that Mr. Griffin entered into a release and settlement agreement on February 28, 2017, wherein he affirmed the terms and conditions of the Agreement. **Doc. 17 at 6.** The Court notes that the majority of the settlement agreement is redacted and it cannot confirm whether he affirmed the conditions of the prior Agreement. Defendants did not file a motion for a protective order so that an unredacted version would be provided to the Court. The Court therefore restricts its facts to the settlement as it relates to the arbitration provision, which is visible in the redacted exhibit.

arbitration provisions contained within a written agreement "evidencing a transaction involving commerce," 9 U.S.C. § 2, governs the Court's interpretation and application of the Arbitration Provision. Under the FAA, such arbitration provisions "are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*.

The FAA articulates a strong national policy in favor of arbitration and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983). Section 2 of the FAA places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010). "Like other contracts, however, [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id*. at 68 (quoting *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)). While the FAA favors arbitration agreements, a legally enforceable contract is still a prerequisite for arbitration, and without such a contract, parties will not be forced to arbitrate. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944-45 (1995) (stating that the presumption in favor of arbitration is reversed when there is a dispute as to the existence of an agreement).[5] Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Dumais v. Am. Golf Corp*., 299 F.3d 1216, 1220 (10th Cir. 2002).

---

[5] *See Howard v. Ferrellgas Partners, L.P*., 748 F.3d 975, 977 (10th Cir. 2014) (". . . [B]efore the Act's heavy hand in favor of arbitration swings into play, the parties themselves must *agree* to have their disputes arbitrated") (emphasis in original); *AT&T Techs., Inc. v. Communications Workers of Am*., 475 U.S. 643, 648 (1986) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal quotation marks and citation omitted).

When a party denies the existence of a valid agreement to arbitrate, the Court must employ a standard of review similar to that of summary judgement. *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012). When there are no genuine issues of material fact regarding the agreement to arbitrate, the Court may decide the arbitration issues as a matter of law. *CMH Homes, Inc. v. Sexton*, 441 F. Supp. 3d 1202, 1207–08 (D.N.M. 2020) (citing *Hancock*, 701 F.3d at 1261); *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997). "On a motion to compel arbitration, the moving party 'bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement.' " *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1190 (D.N.M. 2018) (quoting *Bellman v. i3Carbon, LLC*, 563 Fed. Appx. 608, 612 (10th Cir. 2014); *see BOSC, Inc. v. Bd. of County Commissioners of County of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017) (citing Hancock, 701 F.3d at 1261); *THI of New Mexico at Hobbs Center, LLC v. Patton*, Civ. No. 11-537 (LH/CG), 2012 WL 112216, *6 (D.N.M. Jan. 3, 2012).

## DISCUSSION

Defendants move to compel Plaintiff to arbitrate her claims against them, pursuant to the FAA and the New Mexico Uniform Arbitration Act. In support of the motion, Defendants argue that all of Plaintiff's claims fall squarely within the scope of the arbitration provision section of the Agreement and that Plaintiff does not contest the validity of the Agreement in that the Complaint admits that Mr. Griffin signed it. **Doc. 6 at 6.** Defendants further request that the Court stay the action pending resolution of the arbitration. Plaintiff opposes Defendants' motion to compel, arguing that no valid agreement to arbitrate exists because: (1) the arbitration clause lacks acceptance and mutual assent and is therefore invalid under New Mexico law; and (2) the

7

purported arbitration agreement is both procedurally and substantively unconscionable and thus unenforceable. *See generally* **Doc. 15.** Plaintiff further argues that, contrary to Defendants' assertion, she does in fact contest the validity of the Agreement and there is a genuine issue of material fact as to whether the arbitration clause is a valid agreement.[6] Defendants' Reply contends that the conduct of the parties establishes that there was a valid agreement and that New Mexico law holds that "agreeing to an arbitration provision electronically or via online 'clickwrap' creates an enforceable contract." **Doc. 17 at 2-3.**

I. **Validity of the Arbitration Agreement**

The Court looks to New Mexico contract law to determine the validity of the instant arbitration agreement because Plaintiff is a resident of, and Defendants seek to compel arbitration in, New Mexico. *Salazar v. Citadel Commc'ns Corp.,* 2004-NMSC-013, ¶ 8, 135 N.M. 447, 450, 90 P.3d 466, 469 (citations omitted) ("To determine whether the agreement to arbitrate is valid, courts look to general state contract law, with the caveat that state laws that are specifically hostile to arbitration agreements are preempted by the FAA."). "It is for the trial court, and not the arbitrator, to decide whether a valid agreement to arbitrate exists." *Parrish v. Valero Retail Holdings, Inc.*, 727 F. Supp. 2d 1266, 1274 (D.N.M. 2010) (*quoting Sisneros v. Citadel Broad. Co.*, 2006-NMCA-102, ¶ 13, 140 N.M. 266, 270–71, 142 P.3d 34, 38–39). Under New Mexico law, "[a] legally enforceable contract requires evidence supporting the existence of an offer, an acceptance, consideration, and mutual assent." *Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶ 6, 137 N.M. 57, 60, 107 P.3d 11, 14 (internal citation omitted); *DeArmond v. Halliburton Energy Services, Inc.*, 2003-NMCA-148, ¶ 9, 134 N.M. 630, 634, 81 P.3d 573, 577.

---

[6] Plaintiff initially argues that the Court should deny Defendants' motion for an alleged failure to seek concurrence before filing the motion as required by Local Rule 7.1(a). The Court expects adherence to local rules, but nevertheless rejects Plaintiff's suggestion that it should deny the motion on this basis alone.

### The Agreement has Acceptance and Mutual Assent

Plaintiff asserts that she specifically challenged the validity of the arbitration clause in that the Complaint alleges that Brooker did not mention anything to the Griffins with respect to their rights to sue or arbitrate during their meeting. **Doc. 15 at 5.** Plaintiff argues that the arbitration agreement lacks acceptance (and mutual assent) because Mr. Griffin "never knowingly accepted the arbitration clause" as he was not given an opportunity to read the Agreement on Brooker's tablet during the meeting and was not provided a paper copy. *Id*. **at 6.** Thus, Plaintiff contends, Mr. Griffin lacked the requisite knowledge of the arbitration clause and any purported acceptance was the product of fraud or misrepresentation by Brooker. *Id*.

The Court finds Plaintiff's argument absent merit. It is a fundamental tenet of New Mexico contract law "that each party to a contract has a duty to read and familiarize himself with the contents of the contract, each party generally is presumed to know the terms of the agreement, and each is ordinarily bound thereby." *Ballard v. Chavez*, 1994-NMSC-007, ¶ 8, 117 N.M. 1, 3, 868 P.2d 646, 648. Plaintiff's effort to distinguish the instant matter, arguing that the rule does not apply in light of Brooker's alleged "high pressure sales tactics and false statements," is unconvincing. **Doc. 15 at 7.** Relying almost exclusively upon *DeArmond* (2003-NMCA-148, ¶ 14) Plaintiff posits that Brooker's failure to give the tablet to the Griffins to "scroll through the entire [Agreement]" before signing it and ultimately waiving their right to a trial by jury would "offend[] a basic notion of fairness." **Doc. 15 at 7.** The case is inapposite and Plaintiff's reliance misguided.

In *DeArmond*, the Court of Appeals of New Mexico reversed an order compelling arbitration, finding insufficient acceptance from plaintiff continuing to work for the defendant upon plaintiff's receipt of a mailed notice of a binding, company-wide Dispute Resolutions Program including language to the effect of "[y]our decision to ... continue your current

employment after January 1, 1998 means you have agreed to and are bound by the terms of this Program…" *DeArmond.*, 2003-NMCA-148, ¶ 5. Specifically, the New Mexico Court of Appeals was unwilling to presume knowledge and acceptance of the offer on the sole basis of mailing the agreement. *Id*., ¶ 15 ("While receipt may be presumed, we are unwilling under the facts of the case to equate presumed receipt with actual knowledge of the offer. The record leaves us unable to ascertain whether DeArmond saw the envelope, opened it, and read it or whether DeArmond was otherwise conscious of the fact that remaining on the job would be construed as acceptance of an arbitration agreement."). Notably, the New Mexico Court of Appeals found inapplicable, in that particular case, the presumption that New Mexico law imposes a duty upon the parties to read and familiarize themselves with the contents of a contract, particularly because there was no signed contract. *Id*., ¶ 16. The New Mexico Court of Appeals was unable to conclude from the plaintiff's mere continued employment that he had actual knowledge of the modified terms of the contract. *Id*., ¶ 14. ("We observe that [the defendant] did not provide an arbitration agreement for [the plaintiff] to sign, nor is there an acknowledgment form indicating that he received or read the documents. DeArmond's argument is, in essence, that without a showing that he knew about the proposed new contract terms, there can be no proof that he accepted the offer.").

Here, the facts differ substantially from *DeArmond*, and the Court is unconvinced that there are grounds for an exception to the rule that the parties are bound to familiarize themselves with the terms of a contract. The Agreement presented to the Griffins unambiguously provides the terms of the arbitration provision in large bold, and capitalized font. Unlike *DeArmond*, where the plaintiff did not sign anything, Mr. Griffin did electronically sign the Agreement, and selected the checkbox indicating, in no uncertain terms, that he agreed to arbitration and was waiving the right to a jury trial. **Doc. 6-2, Ex. A at p. 17.** Plaintiff's claim that Brooker could or should have provided

the tablet to the Griffins to review in full or given them a paper copy is absent citation to any legal authority. Moreover, the Court finds particularly problematic for Plaintiff the fact that Mr. Griffin signed a subsequent settlement agreement containing a similar arbitration clause, further eroding support for Plaintiff's argument here. Accordingly, the Court finds sufficient facts in the record demonstrating acceptance of the Agreement.

The Court also rejects Plaintiff's argument, which relies exclusively on *DeArmond*, that the agreement lacks mutual assent because the Griffins were not provided an opportunity to review the entirety of the Agreement and that it was impossible for the parties to have a "meeting of the minds" as to the terms of the arbitration clause. **Doc. 15 at 7-8;** *DeArmond*, 2003-NMCA-148, ¶ 20. ("Parties can be said to mutually assent to a contract when they have the same understanding of the contract's terms; where they attach materially different meanings to the terms, there is no meeting of the minds.").

For similar reasons as discussed above, in *DeArmond* the New Mexico Court of Appeals found there was insufficient evidence of mutual assent to the contract because there was no proof the plaintiff actually knew of the offer or that he was accepting it by continuing to work. *Id.*, ¶ 18. ("In order to ascertain whether the employee consciously assented by continuing to work, there must be proof that the employee actually knew of the offer and was aware that remaining on the job constituted acceptance… Lack of knowledge of the modified terms precludes the formation of a new contract."). This is not the case here. Even giving Plaintiff the benefit of all reasonable doubt, as the Court must, it concludes that the record demonstrates there was the requisite acceptance and mutual assent to bind the parties to the arbitration agreement.[7]

**Whether the Arbitration Clause is Unconscionable**

---

[7] The parties do not dispute that there was an offer and consideration in this transaction. Accordingly, the Court does not include a discussion of those aspects of contract formation.

Plaintiff seeks to avoid application of the arbitration provision on grounds that it is unconscionable. Unconscionability is an equitable doctrine that allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party. *Rivera v. American Gen. Fin. Servs., Inc.,* 2011–NMSC–033, ¶ 43, 259 P.3d 803. Unconscionability is analyzed from both substantive and procedural perspectives. *Id.* A contract may be rendered unenforceable under either substantive or procedural unconscionability, or a combination of both. *Id.* ¶ 47. The two perspectives have an inverse relationship: "[t]he more substantively oppressive a contract term, the less procedural unconscionability may be required for a court to conclude that the offending term is unenforceable." *Cordova v. World Finance Corp. of New Mexico,* 2009–NMSC–021, ¶ 24, 208 P.3d 901.

### 1. Procedural Unconscionability

Procedural unconscionability "examines the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other." *Rivera,* 2011–NMSC–033, ¶ 44 (quoting *Cordova,* 2009–NMSC–021, ¶ 23). When determining procedural unconscionability, a court should look at whether the contract is one of adhesion, a standardized contract offered by a party with superior bargaining strength to a weaker party on a take-it-or-leave-it basis, without opportunity for bargaining. *Id.*

Plaintiff argues that the disparity in bargaining power and sophistication between Brooker and the Griffins, coupled with Brooker's alleged high-pressure sales tactics and "false guarantees" renders the arbitration clause procedurally unconscionable. **Doc. 15 at 9.** The Court agrees with Plaintiff that Defendants, as a corporate entity in the business of selling solar energy components,

compared with the Griffins as average homeowners, operate from a stronger bargaining position. However, a contract is procedurally unconscionable "only where the inequality is so gross that one party's choice is effectively non-existent." *Guthmann v. LaVida Llena,* 103 N.M. 506, 510 (1985), *overruled on other grounds by Cordova,* 2009–NMSC–021, ¶ 31.

While Defendants acknowledge that the instant Agreement is a contract of adhesion in the sense that the Agreement was offered on a "take it or leave it" basis, they correctly note that contracts of this nature containing arbitration clauses have been held enforceable, and that unequal bargaining power alone is not sufficient to find an arbitration agreement in such a contract unenforceable. **Doc. 17 at 10;** *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346–47, n. 5 (2011) (noting further that "…[T]he times in which consumer contracts were anything other than adhesive are long past."); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) (holding that agreements to arbitrate between parties with unequal bargaining power are enforceable).

Here, although Brooker allegedly did not specifically point out the arbitration clause and explain it to the Griffins, the clause was underlined "<u>Arbitration of Disputes</u>" followed by, in large, bold font, **"PLEASE READ THIS PROVISION CAREFUUY. BY SIGNING BELOW, YOU ACKNOWLEDGE AND AGREE THAT, WITH LIMITED EXCEPTIONS, ANY DISPUTE BETWEEN US SHALL BE RESOLVED BY BINDING ARBITRATION**." **Doc. 6-2, Ex. A at p. 10**. Moreover, a final notice is prominently displayed in capital, bold letters to the immediate right of the signature lines section:

> **BY CHECKING THIS BOX, YOU AGREE TO ARBITRATION AND WAIVE THE RIGHT TO A JURY TRIAL AS DESCRIBED <u>IN SECTION 6(e)</u>, AND AGREE THIS CHECKBOX CONSTITUTES YOUR ELECTRONIC SIGNATURE.**

*Id*. **at p. 17.**

It is undisputed that Mr. Griffin selected the appropriate checkbox, and the record does not show that either of the Griffins expressed confusion with, or sought clarification of, the terms or asked to see the Agreement in more detail. The law is clear that each party to a contract has a duty to read and familiarize itself with the contents before signing, and thus, a party who executes and enters a written contract is presumed to know the terms of the agreement and to have agreed to each of its provisions in the absence of fraud, misrepresentation, or some other wrongful act. *See Smith v. Price's Creameries*, *Div. of Creamland Dairies, Inc.*, 1982-NMSC-102, ¶¶ 12-13, 98 N.M. 541, 545, 650 P.2d 825, 829). Moreover, the Tenth Circuit has "routinely" upheld these type of "clickwrap" agreements as enforceable. *Hancock*, 701 F.3d at 1256 ("Clickwrap agreements are increasingly common and 'have routinely been upheld.'…Courts evaluate whether a clickwrap agreement's terms were clearly presented to the consumer, the consumer had an opportunity to read the agreement, and the consumer manifested an unambiguous acceptance of the terms.") (internal citation omitted).

It is equally undisputed that the solar panels were then installed and that Mr. Griffin subsequently entered into a settlement agreement with Defendants in 2017, wherein he again signed to similar arbitration terms. *See THI of New Mexico at Vida Encantada, LLC v. Archuleta*, 2013 WL 2387752, at *7 (D.N.M. Apr. 30, 2013) (citing *DeArmond*, 2003–NMCA–148, ¶ 17 (citing Restatement (Second) of Contracts § 19(2) (1981) ("A party's acts or conduct may manifest his assent to terms of an offer, so long as the party performing the act is aware of the offer and aware that his conduct could constitute acceptance."))). On balance, having considered the relevant

factors, the facts of this case, and in the face of the plain language of the terms of the arbitration clause, the Court concludes that Plaintiff has not shown procedural unconscionability.[8]

**2. Substantive Unconscionability**

Substantive unconscionability focuses on the legality and fairness of the contract terms, including concerns such as the commercial reasonableness and fairness of the terms, the purpose and effect of the terms, and the one-sidedness of the terms. *Rivera,* 2011–NMSC–033, ¶ 45. A contract term is substantively unconscionable if it is "grossly unreasonable" and against public policy. *Id.* (quoting *Cordova,* 2009–NMSC–021, ¶¶ 22, 31). In other words, contract terms that "unreasonably benefit one party over another are substantively unconscionable." *Id.* ¶ 46 (quoting *Cordova,* 2009–NMSC–021, ¶ 25).

Plaintiff argues the arbitration clause is substantively unconscionable because it forces the Griffins to arbitrate any disputes arising from the contract, stripping them of their right to a jury trial, "while not similarly constraining Defendants." **Doc. 15 at 11.** This is inaccurate. Pursuant to the plain language of the Agreement either party may initiate binding arbitration:

> *Either [Plaintiff] or [Defendant] may, without the other's consent*, elect mandatory, binding arbitration for any claim, dispute or controversy arising out of or relating to any aspect of the relationship between [Plaintiff] and [Defendant]… Nothing in this arbitration provision shall preclude [Plaintiff] or [Defendant] from seeking provisional remedies in aid of arbitration from a court of competent Jurisdiction…

**Doc. 6-2, Ex. A at p. 11 (emphasis added).**

---

[8] The Court has not been provided information that would allow it to consider other factors in weighing procedural unconscionability than those discussed in this Memorandum. *See* e.g. *City of Raton v. Arkansas River Power Auth.,* 760 F. Supp. 2d 1132, 1154 (D.N.M. 2009) ("In analyzing whether a contract or a term in a contract is procedurally unconscionable, New Mexico courts consider several factors, including the use of high pressure tactics, the relative scarcity of the subject matter of the contract, and the relative education, sophistication and wealth of the parties.").

Additionally, the Court notes that this is in direct contrast to the facts of *Cordova v. World Fin. Corp. of NM* (2009-NMSC-021), upon which Plaintiff relies for its argument. *See Cordova*, 2009-NMSC-021, ¶¶ 26-27 (finding the agreement particularly egregious because it exclusively reserved for the defendant-lender all rights to pursue litigation while binding the plaintiff-borrower to mandatory arbitration.). Thus, the Court rejects Plaintiff's unsupported argument.

In sum, Defendants have demonstrated that an enforceable agreement was in place and Plaintiff has not met her burden to show that the arbitration clause is either substantively or procedurally unconscionable. *Guarriello v. Asnani*, 2020 WL 7495603, at *3 (D.N.M. Dec. 21, 2020) ("Defendants, as the moving party, bear the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement. Upon presenting sufficient evidence, the 'burden shifts to Plaintiffs to raise a genuine dispute of material fact regarding the existence of an agreement.' ") (internal citation omitted).

**THEREFORE, IT IS ORDERED** that Defendants' Motion to Compel Arbitration (**Doc. 6**) is hereby **GRANTED** and the action is **STAYED** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report **one hundred and eighty (180) days** from the date of entry of this Order to notify the Court of the progress of arbitration and whether an additional stay of the proceedings will be required.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**